IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SAMUEL ROBERTS                                    CASE NO.:
Florida DOC Number 075687,

        Petitioner,

v.

MARK INCH, Secretary,
Florida Department of Corrections,

        Respondent.

_____/

### PETITION FOR WRIT OF HABEAS CORPUS BY
### A PERSON IN STATE CUSTODY §2254
**and**
### REQUEST FOR AN EVIDENTIARY HEARING

    COMES NOW the Petitioner, SAMUEL ROBERTS, Florida DOC Number

075687, currently an inmate serving fifteen (15) years in Florida State Prison, and

hereby files this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254,

as the Petitioner, SAMUEL ROBERTS, is currently being illegally and unlawfully

held and confined by the State of Florida, specifically, by the Respondent, MARK

INCH, in violation of United States Constitutional protections and provisions as set

forth fully in this Petition. More specifically, the Petitioner ROBERTS, states as

follows:

1

## MODEL FORM FOR HABEAS CORPUS UNDER 28 U.S.C. §2254

In compliance with and consistent with the model form for use in Applications for habeas corpus under 28 U.S.C. §2254 found in the Appendix of Forms of the Federal Rules of Criminal Procedure, the Petitioner would state as follows:

1. a)  The judgment and conviction under review occurred in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.

   b)  The challenged judgment and conviction stems from case number 13-8401CF10A.

2. On September 18, 2014, the Petitioner was convicted of one count of sale or delivery of cocaine within one thousand feet of a school, a first-degree felony and was tried before former Judge M. Destry in the 17th Circuit in Broward County, Florida.

3. On October 24 2014, the Petitioner was sentenced to fifteen (15) years in Florida State Prison.

4,7.   The Petitioner did not testify at trial.

8,9.  The Petitioner appealed to the Fourth District Court of Appeals in case no. 4D14-4536, which resulted in a per curiam decision without an opinion affirming the judgment and sentence in *Roberts v. State*, 212 So.3d 373 (Table) (Fla. 4th DCA 2016).

10, 11.       On September 26, 2017, a Motion for Post-Conviction Relief under Fla. R. Crim. P. 3850 was filed in case number 13-8401CF10A before Judge Martin S. Fein, Circuit Court Judge of the Seventeenth Judicial Circuit, Broward County, Florida.  It was denied without a hearing on June 5, 2019.

11(a).       The petitioner raised four grounds in his motion: 1) the Petitioner's failure to file a motion to mitigate his sentence was not knowingly, intelligently and voluntarily made; 2)  the Petitioner was deprived of his right to Due Process because the judge *sua sponte* made the petitioner go to trial without prior notice; 3) the petitioner argued that defense counsel was ineffective for failing to move for a mistrial after the prosecutor violated the pre-trial motion in limine; and 4) Defense counsel was ineffective for failing to object to the prosecutor's bolstering of the confidential informant.

11(a) (1-6)  On June 5, 2019, the motion was denied without an evidentiary hearing.

11(a) (7)    On August 14, 2019, the Petitioner filed a timely Notice of Appeal to the State Appellate Court, the Fourth District Court of Appeal, challenging the summary denial of his Motion for Post-Conviction Relief. On February 20, 2020, the Fourth District Court of Appeal entered a per curiam decision without an opinion. *Roberts v. State,* 2020

3

WL 836684 (Fla. 4th DCA 2020). A motion for rehearing was timely filed, but it was denied on April 20, 2020. The mandate was issued on May 8, 2020.

11.(c,d)   There was no appeal filed with the Florida Supreme Court because the appellate court rendered an order without an opinion, which is not appealable to the Florida Supreme Court. The Petitioner did not seek further review by the United States Supreme Court.

12.   Each ground alleged in this Petition for Writ of Habeas Corpus was raised at the State Court level after having exhausted all State remedies and constitutes the grounds that the Petitioner claims that he is being held in violation of the United States Constitution.

## STANDARD OF REVIEW UNDER 28 U.S.C. §2254

As amended by the AEDPA, 28 U.S.C. § 2254(d) forbids federal courts from granting habeas relief on claims that were previously adjudicated in state court, unless the adjudication was (1) "contrary to, or involved an unreasonable Application of, clearly established federal law, as determined by the United States Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision involves an unreasonable application of federal law "if the state court identifies the correct

4

governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

In the case sub judice, the State courts decision involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court." It also was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." Because the Fourth District Court of Appeal summarily affirmed the denial of Mr. Robert's claims, this court must "look through" that summary affirmance to the state post-conviction court's decision— "the last related state-court decision that [did] provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## **TIMELINESS OF PETITION**

This petition is timely filed within one year from the date that the conviction became final. The petitioner was convicted and then sentenced on October 24, 2014. On November 21, 2014, a timely direct appeal was filed to the Fourth District Court of Appeal for the State of Florida in Case No., 4D14-4536. This tolled the time until the appellate court rendered its per curiam decision on June 30, 2016. No motion for rehearing was filed. The mandate was issued on July 29, 2016.

The *first* day for 2254 purposes began to run on September 28, 2016, which is ninety-days after the time period expired to file review in the U.S. Supreme Court, calculated by using the June 30, 2016 (the day after the issuance of the order)

affirmance date as the starting point.  Thus, in order to be considered timely for federal purposes, a motion for post-conviction relief under Fla.R.Crim.P. 3.850 was required to have been filed by September 28, 2017, the anniversary date.

Counsel preserved the Petitioner's right to file a 2254 petition by filing his motion on September 26, 2017, two days before the expiration of the deadline. The trial court summarily denied the motion on June 5, 2019, and a motion for rehearing was timely filed on June 18, 2019. The motion for rehearing was denied on July 17, 2019. On August 14, 2019, the petitioner filed his timely notice of appeal challenging the summary denial of his motion for post-conviction relief. This continued to toll the time to file a 2254 petition until the mandate was issued.

 The appellate court rendered a per curiam decision on February 20, 2020. A timely motion for rehearing was filed on March 6, 2020, delaying the issuance of the mandate. The motion for rehearing was denied on April 20, 2020 and the mandate was issued on May 8, 2020.  Thus, the time for 2254 purposes begins to run the day after the mandate issued, which was would be May 9, 2020. This petition was filed on the same date that the mandate was issued and thus, the petitioner filed his petition with at least two days remaining. This petition is therefore timely.

## STATEMENT OF THE CASE AND FACTS

The Petitioner, SAMUEL ROBERTS, is incarcerated in State custody currently serving a sentence of fifteen (15) years in Florida State Prison.  He was

convicted by jury and filed a motion for downward departure based upon his various medical conditions.  The Petitioner was sentenced to 15 years in prison and his motion for downward departure was denied.  The appellate court affirmed the trial court's decisions. The petitioner then filed a State Motion for Post-Conviction Relief, which was denied without a hearing.

The petitioner appealed the denial of his motion for post-conviction relief to the appellate court, but it was denied without an opinion, thereby precluding further State appellate review.  A timely motion for rehearing was filed, it was denied and a Mandate was issued.  This timely Petition ensues. References to the record will be to the state court post-conviction record (4D19-2730) and will cite to the page numbers on the bottom right of the record, which is consistent with the PDF numbering. An appendix has not been filed with this petition.

**Court Proceedings:** The petitioner was arrested and charged with delivery of cocaine within 1000 feet of a school.  He was convicted by jury and filed a motion for downward departure based upon his various medical conditions.  The judge sentenced the petitioner to 15 years in prison, denying the petitioner's motion for downward departure. As explained in claim one, the petitioner was denied due process because his attorney was forced to proceed to trial that same day, without adequate notice, and without his discovery from the previous lawyer. The trial explained below.

7

The facts presented at trial were simple. The petitioner purportedly sold a "dime" of crack cocaine to a confidential informant within 1000 feet of a school. This is a first-degree felony, which the state tried to enhance by seeking to habitualize the petitioner. The informant did not testify at trial, but instead, a video recording of the alleged transaction was played for the jury. Detective Santiago, the handler of the confidential informant, also testified at trial. Santiago testified that the informant was fit with a camera and audio listening device. Santiago gave the informant money, checked her to see if she had any drugs on her and then sent her to conduct the drug transaction with someone named Charlie.

This person named Charlie was not found so the informant purportedly purchased a dime of crack cocaine from the petitioner who, according to the state, was essentially captured on the recording. The admission of the recording was hotly contested by defense counsel. The trial court eventually ruled that the tape was admissible, but that some portions of the recording were required to be redacted.

Specifically, the trial court expressly held that the informant's statement to her handler (who she knew was monitoring the transaction via a listening device) that she bought the drugs from "Sam" – the petitioner - must be redacted. The prosecutor acknowledged the court's order and indicated that he would comply. The court was adamant that the video had to be redacted:

COURT:   Well, quite frankly, I'm not sure that any of what she says prior to her having a conversation - - in fact, I am quite sure of this.

Nothing that she says from the time that tape shows her leaving the vehicle until she actually has contact with Mr. Roberts would be admissible.

It is all hearsay, if that is the basis of your objection on that.

Now, the videotape, itself, the image, if you will, would be admissible, but the audio portion would not, up and until such time as she has contact with Mr. Roberts and begins a conversation with him.

At that point the audio becomes admissible, and I would allow the audio, if you will, up and to the point where she makes an identification of Mr. Roberts, she calls him Sam.
That is his first name, Samuel.

She said she was able to - - I forget her exact words, but, buy from Sam.

And the statement of identification made immediately after perceiving someone is an exception to hearsay.

But at that point the audio would have to terminate again, in other words, all of her commentary as she is walking back towards the undercover vehicle would be inadmissible as hearsay.

MR. STRAUSS:    So what - - if I understand the Court's ruling, I will turn the volume off, or I suppose now that it is the lunch break - -

*****

MR. STRAUSS:    Thank you.  So what I will do then is up until the point that she makes contact with him, I will turn the volume or the audio off.

COURT:    Okay.

MR. STRAUSS:    If that is okay with both the court and - -

COURT:    Well, you understand my ruling, it is not admissible.

How you accomplish that is up to you.

Okay.

But the audio portion, up until the time she has contact with Mr. Roberts, and after her statement of identification, if you will, as she is walking back, is inadmissible.

That is my ruling.

How you accomplish that, is up to you.

If you choose to admit the tape at this point, I will admit it over defense objection with that provision.

So, if it is being admitted, depending on how you intend to accomplish this, if you are telling me you are just simply going to turn the volume down, then if this case goes to the jury and they desire to see that tape again,

10

>then they will have to be played in open court with the same, in the same manner, in other words, with the turning the volume down.
>
>Or you can edit it, at this point, and submit an edited version.

MR. STRAUSS:   Since it is a break, I will do that.  I will try to do that.

COURT:   However, you want to do it.
But you understand my rulings with regard to the audio?

MR. STRAUSS:   Yes, After the ID, anything after the ID, it is Sam, it is out.

COURT:   Yes.

MR. STRAUSS:   The audio is out.

COURT:   Correct.
MR. STRAUSS:   But the video stays in?

COURT:   And everything up and until the point where she makes contact with Mr. Roberts.

MR. STRAUSS:   Okay.

COURT:   And it is actually part of the conversation.

MR. STRAUSS:   Okay.  I'm satisfied with the court's ruling on that matter.  Thank you, Judge.

R:889-94. Unfortunately, when the recording was played for the jury in the State's case in chief, the prosecutor did not stop the recording prior to the objectionable statements.

This allowed the jury to hear the informant tell the detective that she bought the cocaine from Sam, the petitioner. The trial court acknowledged that this error took place and simply gave a futile curative instruction informing the jury to "please ignore that portion of the audio on the tape where the person is heard saying, I got a dime from Sam. Does everyone understand?" This failed to unring the bell of the damaging inadmissible evidence.

Defense counsel did not move for a mistrial, nor did he discuss this option with the petitioner. The petitioner was unaware that he could ask for a mistrial. Had the petitioner been informed or made aware of his right to ask for a mistrial, then he would have moved for a mistrial. Defense counsel's failure to inform the petitioner was deficient conduct because it deprived the petitioner of a new trial. There was a reasonable probability that the trial court would have granted the motion.

A motion for mistrial would have been granted, as illustrated by the painstaking effort that the court made to ensure that the state did not present this testimony to the jury. (R:428-53). The court admonished the prosecutor prior to its admission to redact that portion of the recording because it went to the sole question presented to the jury – whether the petitioner sold the informant a dime of crack cocaine. Without a doubt, any curative instruction was futile. The jury could not simply "unring that bell".

12

Additionally, counsel's failure to move for a mistrial deprived the petitioner of having this issue presented to the appellate court. Had a proper motion for mistrial been made and denied, then the issue would have been preserved. Had it been preserved and presented on appeal, there was a reasonable probability that it would have resulted in reversible error. Florida caselaw from the Florida Supreme Court acknowledges that this can form the basis of an ineffective counsel claim.

During the course of the trial, the prosecutor elicited testimony from Detective Santiago that led to the inescapable inference that the informant was trustworthy and that she bought the crack cocaine from the petitioner. In addition to this testimony, the prosecutor also argued to the jury that the informant was reliable and therefore the petitioner was guilty. Counsel did not object to these comments made to the jury, despite the obvious bolstering that took place.

At sentencing, defense counsel presented medical documentation and testimony regarding the various medical conditions of the petitioner. The state sought to habitualize the petitioner, but the court did not find that he was a habitual offender. The court nevertheless sentenced the petitioner to 15 years in prison. A direct appeal was filed and the mandate was issued on July 29, 2016. This timely motion therefore ensues.

## AN EVIDENTIARY HEARING IS REQUIRED

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016).

"It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 474. The pertinent facts of this case are not fully developed in the record – through no fault of the petitioner – as he requested an evidentiary hearing in the state court. Further, an evidentiary is required because if his allegation and assertions are true, then he would be entitled to Federal Habeas Relief. The record also does not refute or undermine the allegations made by the petitioner. As such, an evidentiary hearing is required. *Buh v. Sec'y, Fla. Dep't. of Corr.*, 2020 WL 1873298 * 9 (11th Cir. 2020) (explaining why evidentiary hearing was required).

## GROUND ONE

## THE PETITIONER WAS DEPRIVED OF HIS FUNDAMENTAL RIGHT TO DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION AND RIGHT TO A FAIR TRIAL UNDER THE SIXTH AMENDMENT BECAUSE THE TRIAL COURT FORCED THE PETITIONER TO PROCEED TO TRIAL WITHOUT ADEQUATE NOTICE.

The petitioner filed this claim in the State Court on the basis that the court's *sua sponte* decision to begin a jury trial – without notice - violated the Petitioner's right to due process and right to a fair trial under the Fifth and Sixth Amendments to the U.S. Constitution. R:17-20. The State court denied this claim without an evidentiary hearing. Relief is required because the State court's decision involved an unreasonable application of clearly established Federal law regarding Due Process and the Right to a fair trial by the United States Supreme Court.

Likewise, relief is required because the State Court's decision is based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. *Buhs v. Sec'y Dep't of Corr,* 2020 WL 1873298 (11th. Cir. April 15, 2020). There has been no adjudication on the merits and thus, no deference is afforded. When this occurs, this court does not defer to the lower court's findings.

The record is clear that defense counsel appeared at a **status hearing** in the morning and was shockingly told by the judge that trial would begin hours later. In Broward county, it is irrefutable that a status hearing is not a precursor to trial that

15

same day – a fact that was not disputed in the State Court. The failure to provide any notice – let alone proper notice - denied the Petitioner of  his fundamental right to procedural due process, as well as his right to a fair trial, as guaranteed under the Due Process Clause of the U.S. Constitution, under the Fifth, Fourteenth and Sixth Amendments to the U.S. Constitution, as well in violation of  *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 79 (2009); *U.S. v. Kaley*, 579 F.3d 1246, 1262 (11th Cir. 2009).

**The Trial Court's *Sua Sponte* Decision at the Status Hearing Forcing the Petitioner to Begin Trial the Same Day.**

The Petitioner was initially represented by court appointed attorney Mr. Conway.  After five calendar call hearings, the matter was set for trial on August 25, 2014.  R: ix.  New counsel Mr. Lopez filed a notice of appearance before the trial took place, but he was not available to take over the case.  Mr. Conway remained as the petitioner's lawyer and the trial began. The trial was interrupted during jury selection because the petitioner had a heart issue which caused him to be taken by ambulance to the hospital where he remained for two days. R: 561, 566.  Thus, the first trial ended without a jury being sworn and the matter was set for a status hearing (not a calendar call) on September 15, 2014. R:559, 560–74.

New counsel, Mr. Lopez, appeared at the **status hearing** as the defendant's new attorney.  The case was placed back on the docket as a status hearing. Mr. Lopez

appeared for this status hearing and was forced by the court to proceed to trial.  There was absolutely no notice given to defense counsel that a trial was being set that day or that it was imminent. The case was not set for calendar call, nor did the notice reflect anything different. In fact, defense counsel was not even provided with discovery in the case – a case where the state was seeking to habitualize the Petitioner for a first-degree felony charge, punishable by 30 years in prison.

Mr. Lopez advised the court that he was never informed that a trial was going to start that day and that he received inadequate notice of trial.  Lopez expressly informed the court that "I am not prepared to go to trial today". Mr. Lopez explained that the Petitioner spent two days in the hospital after he went into "cardiac arrest". He also explained that prior defense counsel did not provide him with discovery, which thereby prejudiced the petitioner in counsel's performance and representation.

Defense counsel was not ready, did not have discovery, and did not have adequate time to prepare for trial, thereby violating his Fifth Amendment right to due process. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14 & n. 15, 98 S.Ct. 1554, 1563 & n. 15, 56 L.Ed.2d 30 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing." Lack of notice is likewise a structural error.

Despite defense counsel's multiple protests that he was not given any notice, the court set the trial only 4 hours later.  Instead of scheduling the matter for another

17

day, the Judge *sua sponte* forced new counsel to start trial that day without any notice

and before new counsel had received all of the discovery:

| | |
|---|---|
| COURT: | Do I have a case I am going to try this afternoon? Are we picking a jury on something? |
| PROSECUTOR: | Judge, we have to resume Sam Roberts. We began picking it. We just never really finished it. We were in voir dire and he had, I think, a cardiac arrest or something. |
| COURT: | That is right. |
| PROSECUTOR: | I don't know who is trying it, if it is Sean or Lopez. |
| DEFENSE COUNSEL: | We are here for a status. |

*****

| | |
|---|---|
| COURT: | Are we set for a status today? |
| DEFENSE COUNSEL: | We sure are. |
| PROSECUTOR: | It is set - - |
| COURT: | Are you trying it Sam?  Are you taking over the case? |
| DEFENSE COUNSEL: | I am not trying it today, though. |
| COURT: | Well, you would be, I think. |
| DEFENSE COUNSEL: | I don't think so. I think we are scheduled for a status. |
| COURT: | Are we set for a status today? |
| DEFENSE COUNSEL: | We sure are. |
| PROSECUTOR: | It is set - - |
| DEFENSE COUNSEL: | Mr. - - |
| PROSECUTOR: | I'm sorry, I don't mean to interrupt you. |
| COURT: | But I have a jury panel.  I have a jury panel available, and, look, it is not the state's fault that there was this issue with regard to your client. |
| DEFENSE COUNSEL: | No, no.  My client is very ill, Judge.   He is |

terminally - -

COURT:   I understand.  But that is not the State's fault.

DEFENSE COUNSEL:   I understand.

COURT:   Is he enough to proceed?

DEFENSE COUNSEL:   No. He is under a doctor's care.

He has an appointment on Friday.

COURT:   Where is he today?

DEFENSE COUNSEL:   He is present.

PETITIONER:   Right here.

COURT:   Where?  Come forward, please.

DEFENSE COUNSEL:   I Apologize, Judge, and I don't mean to interrupt what is going on.

COURT:   No, that is okay. I am just trying to sort out. Can you give me two minutes, guys?  Let me figure if I am going to trial.  If I'm not going to trial, maybe we can do this this afternoon.

\*\*\*\*\*

COURT:   Okay.

What does that mean he is under a doctor's care?

First off, where is Mr. Conway?

DEFENSE COUNSEL:   Mr. Conway is on his way. I spoke to him this morning. I crossed paths with him in the hallway.

He is supposed to be turning over the remaining discovery.

\*\*\*\*\*

DEFENSE COUNSEL:   Judge, with all due respect, and my client does have a privilege of asserting his right to remain silent. We are here for a status conference.

COURT:   We are picking a jury at 1:30.

DEFENSE COUNSEL:   We are here for a status conference.

19

| | |
|---|---|
| COURT: | No, we are picking a jury at 1:30. |
| DEFENSE COUNSEL: | Judge, I don't have the discovery. Mr. Conway held onto it. |
| COURT: | I explained this to you before, Mr. Lopez. |
| DEFENSE COUNSEL: | No. |
| COURT: | The realty is this, okay.  You took over this case at the last minute.  You did that at Mr. Robert's request.  He had a perfectly goo lawyer with Mr. Conway's who was ready to proceed.  That is fine.  It is his choice.  That is fine.  But it puts you in this position and that is not an issue for me. |
| PETITIONER: | I just want to know - - |
| DEFENSE COUNSEL: | Judge, I am not prepared to go to trial today. |
| PETITIONER: | I do not want Mr. Conway representing me. |
| DEFENSE COUNSEL: | I am not prepared to go to trial. |
| COURT: | I am not going to debate this with you. |
| DEFENSE COUNSEL: | How could you schedule a status conference and cut him. |
| COURT: | Look I set - - |
| DEFENSE COUNSEL: | First of all, he was hospitalized.  I agree with you.  I was ready to give his funds bac, et cetera.  He went into cardiac arrest.  He was taken by ambulance to the hospital.  He was hospitalized for two days after the scenario that took place in the picking of the jury.  I don't know what happened but I know he is under a doctor's care.  I thought we would have a status conference and, apparently, Mr. Conway didn't turn over the discovery to me because apparently there is some glitz because he couldn't read the stipulation execution document.  So he didn't' give me back the discovery because he didn't know what his obligation was.  So were are here today on a status conference to see how Mr. Roberts is doing.  I didn't know we were scheduled for trial. |

COURT:   I am picking a jury this afternoon.

DEFENSE COUNSEL:   I had no idea and I didn't prepare and I don't have the documents from Mr. Conway.

COURT:   I need you here at 1:30 with you client to pick a jury. Okay. Now, all we are going to do today -- .

DEFENSE COUNSEL:   I am not sure, Your Honor.

COURT:   All we are going to do today is pick a jury.

DEFENSE COUNSEL:   Okay, but I don't have the discovery. I never did. All I had was the copy of the videotape.

COURT:   Do you have discovery?

PROSECUTOR:   Yes. I will provide him with a copy.

COURT:   Give it to him right now. Right now.

*****

COURT:   You are going to get discovery right now from the State.

DEFENSE COUNSEL:   But how fair is that? We are talking about A, I am not noticed.

COURT:   I think that it is fair and just and I will put it on the record why. Okay. Once again, Mr. Roberts did this to you, and to himself. He decided at the last minute to let a perfectly competent lawyer - -

PETITIONER:   No, he is not competent. No, he is not.

COURT:   Mr. Roberts, I'm not prepared to debate this with you.

PETITIONER:   He is not competent.

COURT:   In my judgment Mr. Conway was rendering effective assistance of counsel and doing what he thought was acceptable and best. Okay. That is this court's opinion.

*****

DEFENSE COUNSEL:   We don't. But my only problem is I don't have discovery. You are giving me discovery today

21

forcing me into trial this afternoon.

COURT:  1:30 we are picking a jury.

DEFENSE COUNSEL:  I don't know what kind of more reversible error can you make?

COURT: I guess you will be making your argument to the Fourth.

DEFENSE COUNSEL:  I guess I will.  But the problem is is that - -

COURT:  1:30 trial.  We are picking a jury.

DEFENSE COUNSEL:  Yes.  See you at 1:30, Judge.

R: 560–73.  Counsel picked the jury hours later that afternoon.

Not surprisingly, the Petitioner was convicted as charged. In order to prevail on this claim, it was not necessary to show that a different outcome would have occurred had the Petitioner had proper and adequate notice. Nor is it significant that the picking of the jury began on different days.  Indeed, many scholars and lawyers alike believe that cases are won and lost at the jury selection phase – a critical phase where a lawyer must be prepared and familiar with the case (counsel did not have discovery yet).

Requiring defense counsel to pick a jury with four hours' notice in a case where the Petitioner was facing a first-degree felony with the possibility of being habitualized deprived the Petitioner of his constitutional right to procedural due process under the Fifth Amendment to the U.S. Constitution. See *generally Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Brouard v. McClean*, 753 So.2d 601 (Fla. 4th DCA 2000)

(requiring a new hearing after finding overnight notice to suspend child visitation of husband violated right to procedural due process); *Crepage v. City of Lauderhill*, 774 So.2d 61 (Fla. 4th DCA 2000) (finding that 24-hour notice of adversarial hearing in forfeiture case was unreasonable and constituted a violation of procedural due process). The error is a structural error which does not require an actual showing of prejudice.

Indeed, other cases have also held that even a 24-hour notice is unreasonable and constitutes a violation of procedural due process. *Legal Experts, PL* v. *Tryzbiak*, 970 So.2d 893 (Fla. 5th DCA 2007) (notice of hearing served with a 24-hour notice was unreasonable and failed to afford procedural due process). Here, defense counsel did not have discovery, nor was he given any notice at all that the status hearing was a 4-hour prelude to the beginning of jury selection. Defense counsel expressly advised the court that "I am not prepared to go to trial." This is not simply an instance where a Petitioner was denied a continuance at the time of trial. This is the total lack of notice for a Petitioner facing a tremendous sentence. This also deprived the petitioner of his Sixth Amendment right to a fair trial with prepared counsel.

**The failure to consider the claim likewise constituted a due process violation:** The post-conviction court denied this claim on the basis that it should have been raised on direct appeal. The appellate court affirmed without giving a

written opinion, thereby making it impossible to determine whether the state appellate court agreed with the trial court or simply denied the claim on the merits. However, Fla. R. Crim. P. 3.850(a)(1) requires the post-conviction court to consider constitutional claims to be raised in a motion for post-conviction relief even if it could have been raised on direct appeal. The court wrongfully denied this claim on this basis.

The State court failed to follow its own rule - 3.850(a)(1) - and thus, this likewise violated the Petitioner's right to due process under the Fifth Amendment to the US and Florida Constitutions. The petitioner attempted to challenge the denial of a Federal constitutional violation and thus, the state's misapplication of the rule infringed on the petitioner's Federal Due Process rights. The petitioner also cited to an analogous case, *Johnson v. State*, 128 So. 3d 155 (Fla. 2d DCA 2013), which demonstrates that the claim—a constitutional claim—was proper to raise under 3.850(a)(1), and that the claim did not need to be raised on direct appeal, even if it could have been raised.

In *Johnson,* the post-conviction court denied Johnson's claim on the basis that it was procedurally barred because he could have raised the claim on direct appeal. *Id.* The Second District reversed and held that under Fla. R. Crim. 3.850(a)(1), the petitioner could raise this issue because it involved a constitutional substantive due process claim. *Id.* at 156–57. Importantly, the court determined that the claim was

not procedurally barred even though the petitioner *actually could* have raised the claim on direct appeal. *Id.* at 157 ("[W]hile Johnson could have raised his *Giglio* claim on direct appeal, he did not").

Other cases likewise recognize that a constitutional claim can be raised for the first time in a state 3.850 motion, such as a double jeopardy violation. *Kerrin v. State*, 8 So.3d 395 (Fla. 1st DCA 2009) (double jeopardy claim was cognizable in motion to vacate, set aside, or correct sentence); *see also Boles v. Secretary, Dept. of Corrections*, 2014 WL 4211310, n. 9 (M.D. Fla. 2014). This is true even though it can also be raised for the first time in a direct appeal. *Honaker v. State*, 199 So. 3d 1068, 1070 (Fla. 5th DCA 2016) (double jeopardy violation can be raised for the first time on appeal because it amounts to fundamental error).

As such, the Petitioner's constitutional right to procedural and substantive due process were violated because he was not given notice that he was proceeding to trial four hours later after appearing for a hearing that was irrefutably scheduled in order to get a simple status. He was also denied his right to a fair trial and effective and prepared counsel – both under the Sixth Amendment. The post-conviction court's failure to consider this claim on the merits, contrary to Rule 3.850(a)(1), deprived the Petitioner of his right to procedural and substantive due process under the Fifth and Fourteenth Amendments to the U.S. Constitution.

<u>**GROUND TWO**</u>

**DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR A MISTRIAL WHEN THE PROSECUTOR VIOLATED THE COURT'S ORDER TO MUTE THE INADMISSIBLE STATEMENTS ON THE VIDEOTAPE WHEN PUBLISHING IT TO THE JURY.**

The petitioner filed this claim in the State Court on the basis that counsel was ineffective under *Strickland* and the *Sixth* Amendment for failing to request a mistrial after the state violated a pre-trial order. R:21-27. The order excluded the non-testifying informant's statement to the detective who was listening live to an audio feed that she bought the drugs from the petitioner. The State court denied this claim without an evidentiary hearing. Relief is required because the State court's decision involved an unreasonable application of *Strickland* and its progeny, clearly established federal law by the United States Supreme Court.

Likewise, relief is required because the State Court's decision is based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. *Buhs v. Sec'y Dep't of Corr,* 2020 WL 1873298 (11th. Cir. April 15, 2020). There has been no adjudication on the merits and thus, no deference is afforded. When this occurs, this court does not defer to the lower court's findings.

Defense counsel knew that the taped drug transaction was the most important and most incriminating piece of evidence at trial. Defense counsel was aware that the recording contained objectionable statements and hearsay that were intentionally

made by the confidential informant in a conversation to the monitoring detective. The trial court expressly ordered the state not to play those portions, as illustrated by the court's lengthy and adamant discussion about it.  The court instructed the state on two separate occasions to make sure that this was excluded. The state indicated that it would comply.

Despite the court's express admonishment, the State played the objectionable portion to the jury. This was especially prejudicial because this portion allowed the jury to hear testimony from the CI to the Detective that she received the drugs from Sam:

> I was misinformed like a bitch, but I got Sam. Charlie wasn't there. **But I got a dime from Sam.**

(R:262). The prosecutor failed to redact this critical portion of the testimony that was ordered to be removed, in clear violation of the court order.

Instead of asking for a mistrial, counsel simply agreed to a typical curative instruction advising the jury to disregard that portion of the tape, informing the jury to "please ignore that portion of the audio on the tape where the person is heard saying, I got a dime from Sam. Does everyone understand?" R:263. This curative instruction failed to unring the bell of this prejudicial evidence. *Melehan v. State*, 126 So. 3d 1118, 1125 (Fla. 4th DCA 2012) (recognizing that although a curative instruction will generally obviate the necessity of a mistrial, "there are times when a

curative instruction is not sufficient 'to unring the bell,' and a new trial is required"). This was one of those times.

Defense counsel did not discuss the option of moving for a mistrial with the Petitioner, nor did defense counsel ask for a mistrial. This curative instruction could not cure the error and in fact, exacerbated it. It would be an exercise in futility to expect the jury to "ignore that portion of the audio on the tape where the person is heard saying, I got a dime from Sam." The absurdity is akin to asking the jury to ignore a defendant's statement that h/she was guilty of committing the crime charged. This rendered counsel ineffective under the Sixth and Fourteenth Amendments to the U.S. Constitution, as well as under *Strickland.*

Counsel was ineffective because, had he requested a mistrial, there was a reasonable probability that the motion for mistrial would have (and should have) been granted. Had the Petitioner been advised of the option to move for a mistrial, the Petitioner would have requested the court to grant the mistrial. Indeed, had defense counsel properly assessed the significance of the prejudicial evidence that should have been excluded, then he would have moved for a mistrial. The petitioner was prejudiced because there was a reasonable probability that it would have been granted.

Caselaw recognizes the prejudicial effect of when a motion in limine of this magnitude is violated, thereby demonstrating that the mistrial would have been

granted.  In *Nunez v. State*, 109 So. 3d 890 (Fla. 3d DCA 2013), a pretrial motion in limine had been granted to exclude portions of a forensic interview of the minor victim. *Id.* at 892.  Against the trial court's order, the State introduced an unredacted version of the interview to the jury. Although defense counsel objected to its introduction and spoke loudly over the audio in an attempt to prevent the jury from being contaminated by the unredacted portions, the jury inevitably could not ignore the portions that they had heard.  *Id.* at 892–93.

After the objection had been sustained and the judge ordered the State to "skip over that section" of the interview, the jury then requested to view the entire interview without redactions, which the court allowed.  *Id.*  The court held that allowing the interview to be viewed in its entirety was harmful error and remanded for a new trial.  *Id.* at 893. Allowing the jury to hear the redacted portion, as in Roberts' case, prejudiced the defendant.

In *Seymour v. State*, 187 So. 3d 356 (Fla. 4th DCA 2016), Seymour was observed by officers on surveillance video running down a street clutching something underneath his shirt; another witness stated that, although unsure, he believed the object "looked like a pistol."  *Id.* at 358.  Both parties agreed that the witnesses would not testify that the object concealed in the defendant's shirt was a firearm.  *Id.*

Despite the agreed upon motion in limine, the State presented the surveillance tape to the jury and an officer testified that the defendant was, in fact concealing a firearm under his shirt.  *Id.*  Defense counsel's objection to the officer's statement was overruled, and the defendant was convicted and sentenced to twenty years in prison.  *Id.*

The Fourth District found that the object concealed in the defendant's shirt was impossible for anyone to definitively identify, and the officer was not qualified to interpret the object in the video.  *Id.* at 359.  The court held that allowing the statement to be introduced to the jury over objection was an egregious error because the State and the defendant had agreed, prior to trial, that "there would not be 'any interpretation [at trial] from the police officers of what they believed the video shows.'"  *Id.*  The conviction was reversed and the issue remanded for a new trial because the error was not harmless.  *Id.*

Here, had defense counsel originally sought a mistrial when the unredacted audio tape was published, rather than simply agree to  a curative instruction, then the trial court would have granted the motion due to the grossly negligent conduct of the prosecutor.[1] The trial judge was a no-nonsense type of judge who made it a point to

---

[1] The petitioner does not have to show that the trial court would have granted the motion for mistrial. Under *Strickland*, the defendant only has to show that there was a reasonable probability that the motion would have been granted.

explain to the prosecutor that the court's order cannot be violated. The state's argument that the motion would have been denied is flawed because it looks at this issue in the scope of the entire trial, not at the point of the trial where the violation took place.

Critically, this harmful testimony took place during the testimony of Det. Santiago, the first law enforcement presented to the jury. He was the second witness called at trial by the state; the first witness was merely the assistant principal of the elementary school who presented very brief testimony. Surely, there was a reasonable probability that the trial court would have granted the motion for mistrial after the state violated its order during the first law enforcement witness.

An evidentiary hearing is required is required in order to determine 1) whether the failure to move for a mistrial was a strategic decision and 2) whether the act or omission, if deemed strategic, was a reasonable decision. *Goforth v. State*, 15 So.3d 786 (Fla. 5th DCA 2009) (evidentiary hearing required in order to determine why counsel failed to move for a mistrial); *Plez v. State*, 6 So.3d 1255 (Fla. 3d DCA 2009) (reversing summary denial of the Petitioner's claim based upon ineffective assistance of counsel for failing to object or move for a mistrial based upon improper testimony by detective).

The claim presented is a viable claim for relief and falls within the gambit of when an evidentiary hearing is required. See *Sierra v. State*, 230 So.3d 48 (Fla. 2d

DCA 2017) (counsel's failure to move for a mistrial constituted ineffective assistance of counsel because, even though trial court determined that counsel's decision was strategic, the strategic decision was patently unreasonable under the facts and circumstances of the case).

To be sure, counsel was ineffective for failing to ask for a mistrial, as well as failing to advise the Petitioner of the option of requesting the motion. Allowing the jury proceed after hearing this objectionable testimony is deficient conduct that prejudiced the Petitioner. The jury was allowed to hear evidence from the confidential informant that went to the crux of the entire case – that she bought drugs from the Petitioner. A mistrial would have been desirable, especially since defense counsel sought to continue the trial because he was not ready to proceed since he was recently retained to handle the case. Only an evidentiary hearing can resolve this issue. *Goforth*, 15 So. 3d at 790; *Sierra*, 230 So.3d 48.

Further, in this situation, the requirements of *Strickland* are met by simply showing that there is a reasonable probability that the court would have granted the motion had the Petitioner requested it. There is no requirement that the Petitioner demonstrate that he would be acquitted or fared better at a new trial. This argument is supported by *Middleton v. State*, 41 So.3d 357 (Fla. 1st DCA 2010), which held that the defendant satisfied the prejudice prong of the test for ineffective assistance

by showing that he would have requested, and been granted, a mistrial.[2] See also

*Garrido v. State*, 162 So.3d 1069 (Fla. 4th DCA 2015) (counsel ineffective for not

accepting mistrial or continuance).

In *Middleton*, the defendant proceeded to trial with eleven jurors in a capital

murder case. Defense counsel failed to advise the defendant that he could move for

a mistrial, which the defendant testified at the 3.850 hearing that he would have

requested the mistrial had he been informed. *Id.* at 359. Defense counsel also

submitted an affidavit stating that he believed that the defendant would have moved

for a mistrial. The trial court denied the motion, finding that the prejudice prong

under *Strickland* required that the defendant show that the outcome of the trial would

have been different. *Id.*

However, the *Middleton* court held that all that was required was a showing

that the motion for mistrial would have been granted, not a better outcome at a later

trial.  Importantly, the prejudice prong of *Strickland* does not require a showing that

the motion for mistrial in the Petitioner's case be granted, but instead, only a

reasonable probability.  The *Middleton* court used language that indicated that the

defendant met the prejudice prong because he demonstrated that the motion would

---

[2] Although *Middleton* was decided because the defendant would have been granted a mistrial, it did not deviate or change the *Strickland* standard and require that the Petitioner prove that the mistrial would have been granted.  The *Middleton* court simply used this language because it was a fact, not because it was the standard.

have been granted. This language was not meant to, nor could it, change the "reasonable probability" prong of *Strickland*, which never demands this higher standard.

Here, the Petitioner would have requested the mistrial on both occasions had counsel properly advised him – as in *Middleton* – of the other error(s) that took place at trial, which are set forth in this motion. As such, because the Petitioner would have requested the mistrial and because there was a reasonable probability that the trial judge would have granted it, a new trial is required. Although not required to be shown, the judge's actions of repeatedly admonishing the state to redact the objectionable portion of the tape supports the Petitioner's assertion that there was a reasonable probability that the motion for mistrial would have been granted.

**Counsel was also ineffective for failing to preserve the issue for appeal, which would have resulted in reversal.**

Counsel's failure to move for a mistrial was also deficient under *Strickland* because counsel's omission deprived the Petitioner of his ability to appeal if the trial court denied the motion.  The Florida Supreme Court held that the failure to preserve an issue for appeal can constitute ineffective counsel under *Strickland*. See *Monroe v. State*, 191 So.3d 395, 403 (Fla.2016) ("the failure to properly preserve an otherwise clear error may constitute ineffective assistance of counsel cognizable on direct appeal"). Had the issue been preserved, there was a reasonable probability that

it would have been reversed on appeal. Counsel was ineffective and an evidentiary hearing is required.

## **GROUND THREE**

### **DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTOR'S BOLSTERING OF THE CONFIDENTIAL INFORMANT.**

The Petitioner was deprived of effective assistance of counsel, as guaranteed under the Sixth and Fourteenth Amendments to the U.S. Constitution, as well as under *Strickland*, for failing to object to the improper bolstering of the Confidential Informant. Counsel failed to properly and timely object to the prosecutor's clever bolstering of the informant who did not testify at trial. The credibility of the informant was critical because she was the person who purportedly engaged in the drug transaction with the Petitioner.

The petitioner filed this claim in the State Court on the basis that counsel was ineffective under *Strickland* and the *Sixth* Amendment for failing to request a mistrial after the state violated a pre-trial order. R:27-30. The State court denied this claim without an evidentiary hearing. Relief is required here because the State court's decision involved an unreasonable application of *Strickland* and its progeny - clearly established federal law by the United States Supreme Court.

Likewise, relief is required because the State Court's decision is based on an unreasonable determination of the facts in light of the evidence presented in the State

Court proceeding. *Buhs v. Sec'y Dep't of Corr,* 2020 WL 1873298 (11th. Cir. April 15, 2020). There has been no adjudication on the merits and thus, no deference is afforded. When this occurs, this court does not defer to the lower court's findings.

Counsel was ineffective because he failed to timely object to the following testimony, along with the statements made by the prosecutor in closing argument, which clearly conveyed to the jury that the informant was truthful, reliable and informed the detective that she bought the crack cocaine from the Petitioner:

> Q:  Okay. There came a point in time after the transaction where you would take – where, obviously, you would speak with the informant because you were not capable of actually seeing what took place on the video; correct?
>
> A:  Correct.
>
> Q:  Did you ask the informant before looking at the video what happened inside the apartment?
>
> A:  Yes. I took a statement from the informant after the transaction took place.
>
> Q:  And was that statement consistent with what took place on the video?
>
> A:  After reviewing the video, the statement was completely consistent with what took place.

(R:282).  Defense counsel failed to preserve the issue and did not object until after the next question was posed, which was "Was it at that time that you paid the informant?" R:282.[3]

The failure to object was of course compounded when defense counsel failed to object to the prosecutor informing the jury that the informant was reliable:

> Ladies and gentlemen of the jury, there is your case right there.
>
> Now, some of you might be saying, well, wait a minute, Mr. Strauss, why can't I see the dime?
>
> Why can't I see it?
>
> Where is it?
>
> Prove it to me.
>
> Well, you have to rely on your common sense, now.  This is where you as jurors come together and use your common sense.
>
> You didn't hear from an informant because that informant is confidential.
> And the reason they are confidential is so they can continue to remain confidential.
>
> So what did the government do?
>
> Well, they gave you an officer who said, I searched her.  I gave her $10.
>
> **She has been proven to be reliable.**

---

[3] The attorney general's office also acknowledged in its Answer Brief that the objection was lodged in an untimely manner and therefore not preserved.

> She went, came back.
>
> End of story.
>
> That is it.
>
> That is the government's case.

R:344-45. This improper argument clearly compounded counsel's failure to object to the testimony, and also was objectionable itself.

Counsel was ineffective for failing to timely object to this improper line of questioning, as well as in closing argument. It is improper to inform a jury that the informant is reliable, which amounts to improper bolstering of a state witness, as in the similar case of *Jennings v. State,* 2020 WL 1873228 (Fla. 4th DCA 2020) (granting new trial based on detective's improper vouching of non-testifying informant by calling informant reliable); *see also Page v. State*, 733 So.2d 1079 (Fla. 4th DCA 1999) (granting new trial when detective informed jury that informant was reliable).

First, counsel failed to obtain a correct ruling on the matter because the objection lodged was not applicable to the question pending. This prevented the court from giving a limiting instruction or seeking a mistrial. See *Burford v. State*, 8 So.3d 478 (Fla. 4th DCA 2009) (Defense counsel must object to improper comments "in order to allow a curative instruction or admonishment to counsel"). This likewise applies to improper testimony.

The combination of this prejudicial impact of this testimony and the closing argument compounded the error. This combined bolstering was prejudicial because counsel argued that the handler of the informant was a male and therefore, the detective failed to conduct a thorough and more intrusive search of the female informant for drugs or money.

Here, the inescapable conclusion from the improper testimony clearly conveyed to the jury that the informant told the detective that the Petitioner sold her the crack cocaine.  The specific questions asked, especially the questions leading up to the question asking whether the informant's version was consistent with the recording, clearly conveys this message. See *Geissler v. State*, 90 So.3d 941 (Fla. 2d DCA 2012) (even "if the expert does not comment directly on the child victim's credibility, expert testimony is improper if the juxtaposition of the questions propounded to the expert gives the jury the clear impression that the expert believed that the child victim was telling the truth."). This testimony, especially when combined with the other errors, such as the informant's statement that the jury was told to simply ignore, prejudiced the Petitioner.

## GROUND FOUR

**THE PETITIONER'S FAILURE TO FILE A MOTION TO MITIGATE SENTENCE WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE UNDER THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION.**

The petitioner filed this claim in the State Court on the basis that his decision was not knowingly, voluntarily and intelligently waived under the Due Process Fifth Amendment to the U.S. Constitution. R:12-17. The State court denied this claim without an evidentiary hearing. Relief is required here because the State Court's decision involved an unreasonable application of clearly established federal law pertaining to the Fifth Amendment to US Constitution and the requirements that decisions be made voluntarily under United States Supreme Court precedent.

Likewise, relief is required because the State Court's decision is based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. *Buhs v. Sec'y Dep't of Corr,* 2020 WL 1873298 (11th. Cir. April 15, 2020). There has been no adjudication on the merits and thus, no deference is afforded. When this occurs, this court does not defer to the lower court's findings.

The petitioner hired counsel to represent him after the Petitioner's direct appeal was denied in order to file a motion for post-conviction relief. Counsel was retained within the 60-day time period to file a motion to mitigate sentence under Fla. R. Crim. P. 3.580 after the issuance of the mandate on July 29, 2016. However,

the Petitioner was not advised that a motion to mitigate sentence could be filed by counsel or the Petitioner, nor was the Petitioner aware that this type of motion could be filed. Had the Petitioner known that he could have filed this motion, he would have done so. The Petitioner was entitled as a matter of law to have a motion filed and have it considered by the trial court.

Had counsel advised the Petitioner, or had the petitioner been aware, that this motion could have been filed, then the Petitioner would have advised counsel to file the motion, which counsel would have filed in a timely manner. Alternatively, the Petitioner would have timely filed it pro-se.[4] The motion would have contained arguments argued that mitigation was warranted, the sentence was too harsh in light of the petitioner's medical conditions and that he should be sentenced to more than the lowest permissible sentence, which was only 52 months.

Likewise, the petitioner would have also argued that mitigation was warranted, especially in light of the deficient acts of counsel alleged in the state post-conviction motion. See *Torrealba v. State*, 882 So.2d 408 (Fla. 3d DCA 2004) (motion to mitigate sentence under 3.800 (c) was filed, arguing, inter alia, that ineffective assistance of counsel warranted mitigation). The motion would have also

---

[4] Since counsel did not file a notice of appearance, the court would have been required to accept the motion as a proper and timely motion. It would not have been a nullity and would have been considered by the court.

argued that defense counsel was not prepared due to the improper notice. Of course, this rule allows for mitigation for any reason (even if the court simply thought the previous sentence was too harsh) so these grounds did not have to be proven as if the petitioner was seeking a downward departure.

The Petitioner recognizes that a motion to mitigate under rule 3.800(c) is a collateral proceeding and thus, counsel cannot be deemed ineffective since the Petitioner had no right to counsel for this collateral proceeding. However, this claim is not predicated on counsel's failure to render effective assistance, but instead, it is a separate and distinct claim of involuntariness wholly apart from a claim of ineffective counsel under the Sixth Amendment. See *Panchu v. State*, 1 So.3d 1243 (Fla. 4th DCA 2009); *Brazeail v. State*, 821 So.2d 364 (Fla. 1st DCA 2002) (recognizing the difference between a claim of involuntariness in the context of a plea and a claim grounded on ineffective assistance of counsel); see also *Yeomans v. State*, 172 So.3d 1006 (Fla. 1st DCA 2015).

Instead, as argued to the State court, the claim is based on a violation of the Petitioner's right to Due Process, as well the principles set forth in *Brady v. United States*, 397 U.S. 742 (1970); *North v. Alford*, 400 U.S. 25 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); *Boykin v. Alabama*, 395 U.S. 238 (1969). Indeed, this presents a federal claim because the Petitioner forfeited a proceeding that he was

entitled to utilize and have the court consider. His failure to file the motion was not knowingly forfeited.

Although the petitioner was not entitled to counsel for the proceeding, he was still entitled as a matter of right to file a motion under Fla. R. Crim. P. 3.800(c), which gives the court discretion to mitigate the petitioner's sentence for any reason. The Court's decision in *Lee v. United States,* 137 S.Ct. 1958 (2017), provides a similar analysis to be used to determine whether his failure to file the motion was knowingly made since it resulted in a forfeiture of a proceeding that he was entitled.[5]

The Supreme court recognized that it is the denial of a proceeding that a Petitioner was entitled to – regardless of result – that is relevant, not the probability of being granted:

> But in this case counsel's "deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself." *Flores–Ortega*, 528 U.S., at 483, 120 S.Ct. 1029. When a Petitioner alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial "would have been different" than the result of the plea bargain. That is because, while we ordinarily "apply a strong presumption of reliability to judicial proceedings," "we cannot accord" any such presumption "to judicial proceedings that never took place." Id., at 482–483, 120 S.Ct. 1029 (internal quotation marks omitted).

---

[5] *Lee* involves a Sixth Amendment Claim, but it is not relied on for that purpose.

> **We instead consider whether the Petitioner was prejudiced by the "denial of the entire judicial proceeding ... to which he had a right."** Id., at 483, 120 S.Ct. 1029. As we held in *Hill v. Lockhart*, when a Petitioner claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the Petitioner can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S., at 59, 106 S.Ct. 366.

*Lee,* 137 S. Ct. at 1965 (emphasis added).[6]

Thus, the Petitioner did not knowingly waive his right to this proceeding. The proper remedy is for this Honorable Court to allow the Petitioner to file a motion to mitigate his sentence under Fla.R.Crim.P. 3.800(c) with a full and meaningful consideration of the motion. This is an appropriate and fair remedy that is required by the Due Process Clause of the Fifth Amendment and under logic set forth in *Lee*.

## <u>REQUEST FOR CERTIFICATE OF APPEALABILITY</u>

Although the petition should be granted, a certificate of appealability should be issued if said petition is denied. Reasonable jurists could debate whether the constitutional questions presented entitle the petition to the requested relief. All of the petitioner's claim involve a Federal Constitutional question or issue.

---

[6] Again, *Lee* was merely cited to emphasize the significance of the forfeiture of a legal proceeding in which a Petitioner has a right. The claim presented is not a claim of ineffective counsel, but instead one regarding whether his failure to file the motion was knowingly done.

13.     All of the aforementioned grounds for relief raised in this petition

        have been presented to the highest state court having jurisdiction.

14.     There are no other motions, petitions or applications that were ever filed

        in Federal Court.

15.     There are no other motions, petitions or appeals pending in any state or

        Federal court.

16.     The Petitioner's prior attorneys were:

        a)      **Lower Court Proceedings and Pleadings**: Samuel Lopez, Esq., 1806
                N. Flamingo Rd, #331, Pembroke Pines, FL  33028.

        b)      **Appellate Proceedings:**  Office of the Public Defender, 421 Third
                Street, Sixth Floor, West Palm Beach, FL  33401.

        c)      **Post-Conviction Proceedings State Motion:** Russell Williams, Esq.
                633 Southeast 3rd Avenue Suite 301, Fort Lauderdale, Florida 33301
                and Jason T. Forman, 110 Southeast 6th Street, Suite 1734, Fort
                Lauderdale, FL 33301.

        d)      **Appeal of the denial of the Motion for Post-Conviction Relief**:
                Jason T. Forman, Esq. 110 Southeast 6th Street, Suite 1734, Fort
                Lauderdale, FL 33301.

17.     The Petitioner does not have any future sentence to serve after serving the
        sentence that is being challenged within the instant petition.

18.     The Petitioner's Writ for Habeas Corpus is being filed within the one year
        of the statute of limitations contained in 28 U.S.C. § 2244(d) and explained
        in the petition and thus, it is not time barred.

        WHEREFORE, the Petitioner is respectfully requesting an <u>evidentiary</u>

<u>hearing</u>, and an order <u>granting</u> the Petition for Writ of Habeas Corpus, remanding

the matter back to the trial court for the appropriate relief, providing petitioner with her fundamental rights under the Fifth, Sixth and Fourteenth Amendments to the US Constitution.  **A certificate of Appealability is respectfully requested for all claims that are denied.**

Respectfully submitted,                    Respectfully submitted,

**Law Offices of Russell J. Williams, P.A.**   **Law Offices of Jason T. Forman, P.A.**
(For Claim 4)                               110 Tower, Suite 1734
633 Southeast Third Avenue, Suite 301       110 Southeast 6th Street
Fort Lauderdale, Florida 33301             Ft. Lauderale, Florida 33301
(954) 525-2889                             (954) 527-5557
Email:  Rjwesquire@aol.com                 Email: attorneyforman@yahoo.com

By: /s/ Russell J. Williams_____          By:/s/ Jason T. Forman_____
    Russell J. Williams, Esq.              Jason T. Forman, Esq
    Florida Bar No.:  727751               Florida Bar No.:   109850

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SAMUEL ROBERTS                          CASE NO.:
Florida DOC Number 075687 ,

        Petitioner,

v.

MARK INCH, Secretary,
Florida Department of Corrections,

        Respondent.

_____/

## <u>UNNOTARIZED OATH IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS</u>

UNDER PENALTIES OF PERJURY, I declare that I have read the foregoing Petition for Writ of Habeas Corpus (§2254) and I hereby swear and affirm that the facts contained therein are true and correct.

SAMUEL ROBERTS
DC# 075687
Dade Correctional Institution (Male)
19000 S. W. 377th Street
Florida City, Florida 33034-6409

47

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of this **Petition for Writ of Habeas Corpus** was electronically filed with the Clerk of the United States District Court of Appeal, Southern District (CM/ECF), 299 East Broward Boulevard, Fort Lauderdale, Florida 33301 and was also simultaneously sent to the **Office of the Attorney General,** crimappwpb@myfloridalegal.com, 1515 North Flagler Drive, 9th Floor, West Palm Beach, Florida 33401, and via U.S. Mail to Petitioner, **Samuel Roberts**, DC No.: 075687, Dade Correctional Institution (Male)19000 S. W. 377th Street, Florida City, Florida 33034-6409 on this 8th day of May, 2020.

Respectfully submitted,                     Respectfully submitted,

**Law Offices of Russell J. Williams, P.A.**    **Law Offices of Jason T. Forman, P.A.**
(For Claim 4)                               110 Tower, Suite 1734
633 Southeast Third Avenue, Suite 301       110 Southeast 6th Street
Fort Lauderdale, Florida 33301              Ft. Lauderdale, Florida 33301
(954) 525-2889                              (954) 527-5557
Email:  Rjwesquire@aol.com                  Email: attorneyforman@yahoo.com

By: /s/ Russell J. Williams                 By:/s/ Jason T. Forman
       Russell J. Williams, Esq.                  Jason T. Forman, Esq
       Florida Bar No.:  727751                   Florida Bar No.:   109850