**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISON**
CASE No. 20-60928-CIV-CANNON/HUNT

SAMUEL ROBERTS,

        Petitioner,

v.

MARK INCH, Secretary,
Florida Department of Corrections

        Respondent.
_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Samuel Roberts' ("Petitioner") petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. His petition attacks the constitutionality of his judgment of conviction in Case No. 13-8401CF10A, Seventeenth Judicial Circuit of Florida, Broward County. ECF No. 1. This matter was referred to the undersigned by the Honorable Aileen M. Cannon, United States District Judge, for a report and recommendation. ECF No. 10.

The undersigned, having reviewed the Petition, Response and Reply thereto, and the entire record, respectfully recommends that the Petition be **DENIED**.

## **Background**

Petitioner was charged with sale/delivery of cocaine within 1,000 feet of a school. ECF No. 14-1 at 2.[1]  A jury found him guilty of the charge on September 18, 2014, and he was sentenced to fifteen years' imprisonment. ECF No. 14-1 at 46, 58.

Petitioner timely appealed his conviction raising three issues: that the trial court erred in admitting an audio/video recording; that the trial court improperly denied his motion for judgment of acquittal; and that an officer's testimony improperly bolstered the informant's credibility.  The Fourth District Court of Appeal ("Fourth DCA") affirmed the conviction *per curiam*.  *Roberts v. State*, 212 So. 3d 373 (Fla. 4th DCA 2016).

Petitioner then filed a motion pursuant to Florida Rule of Criminal Procedure 3.850 asserting the following claims for relief: trial counsel was ineffective for failing to properly advise Petitioner of his option to timely file a motion to mitigate sentence after the issuance of the mandate on direct appeal; Petitioner's right to due process was violated because the trial court forced Petitioner to proceed to trial without adequate notice; and trial counsel was ineffective for failing to move for a mistrial based on a portion of an audio recording that was played for the jury in violation of the court's prior ruling.  ECF No. 10-9.  Petitioner's motion was denied.  ECF No. 10-11.  He appealed and the Fourth DCA affirmed.  *Roberts v. State*, 292 So. 3d 1174 (Fla. 4th DCA 2020).

This federal proceeding was initiated when Petitioner filed a § 2254 petition. ECF No. 1. Respondent filed a response and supporting appendices. ECF Nos. 13–18. Petitioner replied.  ECF No. 24.

---

1. All page citations for ECF entries refer to the page-stamp number located at the top, right-hand corner of the page.

**Timeliness**

Respondent does not contest the timeliness of the Petition. Any timeliness defense that could have been raised is therefore waived and the Petition will be considered timely.

**Exhaustion**

Pursuant to 28 U.S.C.§ 2254(b)-(c), petitioners must exhaust all available state claims before presenting them in a federal habeas petition, otherwise § 2254 may bar federal review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)). However, "[a] petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." *Jones v. Campbell*, 436 F.3d 1285, 1304 (11th Cir. 2006).

The cause prong is satisfied where "something external" that cannot "fairly be attributed" to the litigant's conduct impeded a litigant's efforts to comply with the procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (relying upon *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Alabama Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017) (quoting *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)) (internal quotations omitted).

"If a petitioner cannot show cause, he may still survive a procedural bar by proving that the failure to hear the merits of his claim would endorse a fundamental miscarriage of justice." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (relying upon

*Murray v. Carrier*, 477 U.S. 478, 495 (1986)).  Under this miscarriage-of-justice exception, "actual innocence, if proved, serves as a gateway through which a [§ 2254] petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (relying upon *House v. Bell*, 547 U.S. 518 (2006) and *Schlup v. Delo*, 513 U.S. 298 (1995)).

To qualify under this exception, a petitioner must show that, in light of new evidence, no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation" will not allow a federal court to review the procedurally barred claim through this exception. *Schlup*, 513 U.S. at 316.

### Standard of Review

The power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner is limited. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The most restrictive limit is that found in § 2254(d).  As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), pursuant to § 2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal brackets omitted).  A state court's decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Consalvo*, 664 F.3d at 844 (quoting *Williams*, 529 U.S. at 413).  Importantly, AEDPA's deferential standard under § 2254(d) applies only whenever state court proceedings adjudicated a claim on the merits. *See Cullen*, 563 U.S. at 181.

To qualify as an adjudication on the merits, very little is required.  In fact, federal courts should presume that § 2254(d)'s deference applies. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Even where there was a summary denial and no reasons for the denial of relief were articulated by the state court, such a ruling is presumed to be an adjudication on the merits. *Id.* at 100; *see also Gill v. Mecusker*, 633 F.3d 1272, 1288-89 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference).  "The presumption [in favor of a merits ruling existing] may be overcome" only "when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99–100 (relying upon *Ylst v. Nunnemarker*, 501 U.S. 797, 803 (1991)).

In *Wilson v. Sellers*, 138 S. Ct. 1188, 1192–94 (2018), the Supreme Court held that there is a "look through" presumption in federal habeas corpus law, as silence implies consent. This means federal courts should rely upon the "last related state-court decision" that provides a relevant rationale when the highest state court's adjudication on the merits of a claim is unaccompanied by an explanation. *See id.* at 1192. Put into practice, *Wilson* clarifies the reasoning behind § 2254(d)'s presumptive deference.

Federal courts may also deny § 2254 petitions if the claims would fail under *de novo* review, a more favorable standard, as a habeas petitioner would surely not be entitled to a writ under § 2254(d) if the claim would fail under that standard. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *see also Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014). If a federal court engages in such *de novo* review, the court may decline to resolve whether § 2254(d) applies. *See Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109–10 (11th Cir. 2012).

## Discussion

### Ground 1

In his first count, Petitioner alleges that the trial court violated his federal due process rights by forcing him to proceed to trial without adequate notice. The Government contends that Petitioner did not properly exhaust this claim because Petitioner did not raise it on direct appeal.[2] Instead, the Government contends that Petitioner raised this claim for the first time in his 3.850 motion for post-conviction relief. The Government also alleges that the trial court recognized that this claim raised in his 3.850 motion was a due process claim that should have been raised on direct appeal and denied the claim. As a

---

2.     The Government raises failure to exhaust only as to Petitioner's first claim.

result, the Government alleges that Petitioner did not provide the state court a meaningful opportunity to address the claim. Petitioner counters that due process claims under the Fifth Amendment can be raised for the first time in a 3.850 motion.

Upon review of the record, it appears that the last state court rendering a judgment did not clearly and expressly state that its judgment rests on a state procedural bar. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994). "A procedural default bars the consideration of the merits of an issue in federal court only when the state court itself applies the procedural default rule." *Draper v. Secretary, Dep. Of Corrections*, No. 3:17-cv-750-J-39MCR, 2019 WL 3037794, at *9 (M.D. Fla. July 11, 2019) (quoting *Dobert v. Strickland*, 718 F.2d 1518, 1524 (11th Cir. 1983)). The Fourth District affirmed the trial court's ruling on Petitioner's Rule 3.850 motion per curiam, without a written opinion. This Court cannot find that the Fourth District employed a procedural default rule based on the record before it. However, to the extent the claim is properly before this Court, it should nevertheless be denied on the merits.

The record shows that on May 29, 2014, the court issued notice that trial was scheduled to begin in August 2014. Petitioner was present during calendar call on August 7, 2014, when the trial date was set. ECF No. 14-1 at 16. Petitioner was also present on August 20, 2014, when the court set trial to begin on Monday August 25, 2014. *Id.* at 23. However, a few days prior to trial, Petitioner decided to retain new counsel, Mr. Lopez.

On the day that trial was to begin, Petitioner appeared, as did the court-appointed attorney he wished to remove, Mr. Conway. That morning, the court was made aware—for the first time–of Petitioner's desire to retain a different lawyer. ECF No. 13-1 at 2. However, Petitioner's desired lawyer was unavailable to appear in person even though

7

trial was set to begin on that day.  ECF No. 13-1 at 2.  The court spoke with Mr. Lopez via telephone.  Mr. Lopez explained that late the previous Thursday evening, Petitioner told him that he wanted to retain him.  Mr. Lopez then drafted a stipulation and substitution of counsel and took it to Mr. Conway's office.  ECF No. 13-1 at 3.  He filed a motion to continue the trial at 5:00 p.m. on Friday.  At the Monday hearing, Mr. Lopez informed the court that he was not in Broward County at that moment.  ECF No. 13-1 at 4.  Mr. Lopez explained that he was in Bartow for another hearing and originally believed he would be able to attend the hearing in Broward.  ECF No. 15-1 at 5.  The court explained to Mr. Lopez that it would not grant a continuance due to the fact that trial had been set for some time, jurors were currently waiting in the hallway, and Mr. Lopez was unavailable.  *Id.* at 9-10.  Petitioner stated his objections and maintained that his attorney of choice, Mr. Lopez and not Mr. Conway, was in Bartow and could not proceed to trial as scheduled. ECF No. 15-1 at 13–14.

The court explained to Defendant that his options were to either represent himself or have Mr. Conway represent him.  *Id.* at 7–8.  Mr. Conway reiterated his objections to being required to represent Petitioner against his wishes.  *Id.*  The court then proceeded to conduct voir dire with Mr. Conway as counsel; however, during voir dire Petitioner suffered a cardiac arrest.  The court continued the trial and set the case for a status on September 15, 2014.  ECF No. 16-1.

On September 15, 2014, Petitioner appeared along with Mr. Lopez.  ECF No. 16-1.  The court asked whether Mr. Lopez would be trying the case, to which he responded he would not be trying it today.  ECF No. 16-1 at 3.  Mr. Lopez claimed that he understood that the hearing was only set for a status.  *Id.*  The court explained that there was a jury

panel available and that it was not the state's fault that there was an issue in regard to Petitioner's illness.  *Id.*  Mr. Lopez argued that his client was very ill and under a doctor's care.  *Id.*

The court proceeded with a colloquy with Petitioner to determine whether he was coherent enough to proceed.  ECF No. 16-1 at 5.  The court asked if there was a reason that they could not proceed with trial that day.  *Id.*  Petitioner responded that he was not well.  *Id.* at 5–6.  The court determined that Petitioner was coherent and oriented and decided that they would be picking a jury at 1:30 p.m. that day.  *Id.* at 6.  Mr. Lopez informed the court that he was not prepared to go to trial that day, as he understood that day was only set for a status conference, and he had not yet received all of the discovery from Mr. Conway, only a video.  *Id.* at 7–8.  Mr. Lopez continued to state his objection and argued that he could not understand how a status conference could turn into a trial. *See id.* at 9.  However, the court informed Mr. Lopez that the status was for that morning and that they would pick the jury in the afternoon.  *Id.*  The court also ordered the state to immediately provide the discovery to Mr. Lopez.  *Id.*

The court reminded Mr. Lopez that during the previous hearing, the court cautioned Mr. Lopez that if he were to take the case, he would be taking it as is, without any continuances.  *Id.* at 10.  The court then adjourned the hearing to resume at 1:30 p.m. to select a jury.  *Id.* at 12-13.  Although the jury was selected on September 15, 2014, the remainder of the trial did not begin until September 18, 2014.  Mr. Lopez did not renew the objection to proceeding on that day.

"The decision whether to grant a continuance is a matter left up to the discretion of the trial judge."  *Raulerson v. Wainwright*, 732 F.2d 803, 811 (11th Cir. 1984).  "To

warrant habeas corpus relief, the petitioner must show not only that the [trial] court abused its discretion but that the abuse was so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Id.* (quotation and citation omitted). "[A] trial court's ruling on a motion for continuance is to be reviewed in the light of the circumstances presented, focusing on the reasons offered for the continuance when the request is made." *Nunez v. McNeil*, No. 07-61584-CIV-JORDAN/WHITE, 2008 WL 11516912, at *19 (S.D. Fla. June 4, 2008) (citation omitted).

Here, the undersigned finds that the trial court did not abuse its discretion. Trial had been set in the case for months, and was scheduled to begin on August 25, 2014. Petitioner was aware of the trial date. However, just four days prior to trial, Petitioner retained an attorney who could not be available for his scheduled trial date. During voir dire, Petitioner's sudden illness required the court to continue jury selection. The court then set the case for a status conference three weeks later, allowing time for Mr. Lopez to have requested and reviewed the discovery in the case. At the status conference, the court informed Petitioner and his counsel that voir dire would resume that afternoon. The court determined that Petitioner was coherent and well-oriented enough to resume with trial and allowed Mr. Lopez to have some time to review the discovery. Voir dire commenced that day, however, the evidentiary portion of the trial began three days later on September 18, 2014. Thus, Petitioner's claims that he was forced to trial without any notice is unsupported by the record. Therefore, the undersigned recommends that Petitioner's request for habeas corpus relief be denied as to ground one.

<u>Ground 2</u>

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or direct appeal counsel, and both are governed by *Strickland*. *See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that counsel took during the proceedings.  *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).  The prejudice prong is met if, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been favorable to the defendant. *Strickland*, 466 U.S. at 694.  The error must also be "so serious" that the error "deprive[d] the defendant of a fair trial, a trial whose result is reliable[,]" in order to satisfy the prejudice prong. *Strickland*, 466 U.S. at 687.

Petitioner alleges that his counsel was ineffective for failing to move for a mistrial when a certain portion of an audio recording was played for the jury in violation of the trial court's prior ruling.  The court allowed the video of an alleged drug transaction to be

11

admitted but limited the playing of the audio portion of the video only up until the point at which the confidential informant identified Petitioner.   The video showed that the confidential informant was searched prior to interacting with Petitioner and she did not possess any contraband.   The Officer gave the confidential informant $10.   The video further showed that the confidential informant interacted with Petitioner, and upon return, the confidential informant handed the officer a substance which was field tested positive for cocaine.   The prosecution showed the video and allowed the accompanying audio to play past the identification of Petitioner, contrary to the court's ruling.   The court gave a curative instruction to the jury advising them to ignore that portion of the audio.

The audio portion of the tape that was ordered excluded captured a conversation between the confidential informant and the detective in which she told the detective that she had received a "dime" from Petitioner.   After the excluded audio was played, Petitioner complains that his counsel, rather than requesting a mistrial, agreed to a curative instruction.   Petitioner argues that the curative instruction was insufficient to cure the prejudice already suffered.   Petitioner further argues that his counsel was ineffective because there was a reasonable probability that a motion for mistrial would have been granted if requested.   The Government responds that any error in allowing the video to play past the identification of Petitioner was harmless, as the audio did not taint the entire trial and there was a myriad of independent evidence to show Petitioner's guilt aside from the prejudicial remark on the tape.

Based upon review of the record, the undersigned finds that allowing this portion of the audio to be played in contravention of the trial court's order was not so egregious as to invalidate the entire trial.   There was ample independent evidence of Petitioner's

guilt, such as the video itself and the officer's testimony.  Further, any prejudice suffered was limited by the curative instruction issued by the court.  Therefore, the undersigned recommends that Petitioner's request for habeas corpus relief be denied as to ground two.

Ground Three

Petitioner next argues that his trial counsel again rendered ineffective assistance of counsel by failing to object to the state's alleged improper bolstering of the confidential informant, both during redirect of the detective and during the state's initial closing argument.  The Government responds that the detective did not provide his opinion on the informant's credibility and that the prosecutor's comments during closing argument were in response to defense counsel's attacks on the confidential informant's credibility. Further, the Government argues that at no point did the prosecutor state that the detective considered the confidential informant to be reliable.

During his direct examination, the lead detective testified as follows:

> Q. The informant, could you tell the ladies and gentlemen of the jury a little bit about how long you had been working with the informant.
> MR. LOPEZ: Objection, improper bolstering.
> THE COURT: Overruled. You can answer question.
> A: I had worked with the informant for several months before that on prior investigations and other types of investigations.
> Q. Have you worked with her recently?
> A: Recently, no.
> Q. When was the last time the City of Fort Lauderdale has utilized this informant?
> A: The informant has worked with other detectives in my division on recent investigations.
> MR. LOPEZ: Objection, outside the scope of his knowledge. Hearsay.
> THE COURT: Overruled.

ECF No. 17-1 at 31.

During redirect examination, the following testimony took place:

> Q: Okay. There came a point in time after the transaction where you would take – where, obviously, you would speak with the informant because you were not capable of actually seeing what took place on the video; correct?
> A: Correct.
> Q: Did you ask the informant before looking at the video what happened inside the apartment?
> A: Yes. I took a statement from the informant after the transaction took place.
> Q: And was that statement consistent with what took place on the video?
> A: After reviewing the video, the statement was completely consistent with what took place.

ECF No. 17-1 at 104.  Petitioner's counsel then objected to the next question, "[w]as it at that time that you paid the informant?" as improper bolstering.   The objection was overruled.  *Id.*

During the state's closing argument, the prosecutor stated:

> Ladies and gentlemen of the jury, there is your case right there. Now, some of you might be saying, well, wait a minute, Mr. Strauss, why can't I see the dime? Why can't I see it? Where is it? Prove it to me. Well, you have to rely on your common sense, now. This is where you as jurors come together and use your common sense. You didn't hear from an informant because that informant is confidential. And the reason they are confidential is so they can continue to remain confidential. So what did the government do? Well, they gave you an officer who said, I searched her. I gave her $10. She has been proven to be reliable. She went, came back. End of story. That is it. That is the government's case.

ECF No. 17-1 at 166–67.

Petitioner relies on *Jennings v. State*, 294 So. 3d 378 (Fla. 4th DCA 2020) and *Page v. State*, 733 So. 2d 1079 (Fla. 4th DCA 1999) in support of his argument that his counsel was ineffective for failing to timely object to the prosecution's alleged improper bolstering.

In *Jennings*, the trial court overruled the defendant's objection to improper bolstering when the lead detective testified that he had used the confidential informant before and had found the informant to be reliable.  294 So. 3d at 381.  The appellate court held that the officer improperly bolstered the confidential informant's testimony and that the error was not harmless because the jury may have dismissed any potential misgivings about the informant's credibility based on the lead detective's opinion.  *Id.* at 382.  Similarly, in *Page*, the appellate court found that the officer's testimony that the only eyewitness to the transaction was very trustworthy and reliable was not harmless and that the trial court erred when overruling the defendant's objection.  733 So. 2d at 1081.

"When faced with a question of whether improper vouching occurred we ask whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness's credibility."  *United States v. Castro*, 89 F.3d 1443, 1456–57 (11th tCir. 1996) (citation and quotation omitted).  However, it must be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office *or on evidence not before the jury*."  *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991).  "When the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment does not require a new trial."  *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where the "[g]overnment counsel only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses as well as a tape recording corroborating the testimony of another").

After reviewing the record in its entirety, including the prosecution's closing argument and the redirect examination of the lead detective, the undersigned finds that Petitioner's counsel's failure to timely object during either portion did not constitute deficient performance and did not prejudice Petitioner.  Regarding the testimony of the lead detective, the lead detective testified that he has worked with the confidential informant in other cases and that the informant has recently worked with other detectives in his division.  ECF No. 17-1 at 31.  Nowhere in the detective's testimony did he assert that the confidential informant has been proven to be reliable in other investigations nor did he provide his opinion on the credibility of the informant.  Further, on redirect, the detective testified regarding his own observations prior to, during, and after the transaction; how those observations matched up with those of the confidential informant; and how he confirmed that what the confidential informant told him conformed with what he observed on the recording.  Thus, even though a bolstering objection was lodged to a subsequent question (and was overruled), the undersigned finds that Petitioner's counsel's failure to timely object to this portion of the detective's testimony did not constitute ineffective assistance of counsel because the detective did not improperly bolster the informant's credibility.

Regarding the prosecution's closing argument, it is evident that the prosecutor's remarks during closing were tied to a summary of the evidence presented at trial and the inferences derived therefrom.  The credibility and reliability of the informant and the accuracy of the video were a central point of contention throughout the trial.  The prosecution's comments, taken as a whole, simply reiterated what the video showed, and maintained that the testimony was consistent with the video.

16

Specifically, the prosecution stated that the detective searched the informant, he gave her the money, she "went, came back," and she has proven to be reliable.   In context, this comment could be understood as a straightforward observation that the informant receiving money from the detective, engaging with Petitioner, and returning with narcotics proves that she was reliable.  In other words, the informant used the money she was given to obtain drugs, just as she was instructed to do.   To the extent the prosecution's comment could somehow be understood to be stating that the detective had vouched for the informant's reliability, this interpretation necessarily misconstrues the detective's actual testimony.  He said no such thing.  In any event, any potential confusion was remedied by the court's instruction to the jury to rely only on the evidence they heard during trial, and that closing arguments are not evidence.  Finally, even if the prosecutor's comments during closing could have been seen as improperly bolstering the credibility of the informant, the undersigned finds that the impropriety did not rise to the level "where the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Dukes v. Dixon*, No. 21-82156-CIV-SMITH, 2023 WL 2809520, at *7 (S.D. Fla. April 6, 2023) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974)).  Thus, the undersigned recommends that Petitioner's request for habeas corpus relief be denied as to ground three.

<u>Ground Four</u>

Finally, Petitioner contends that his failure to file a motion to mitigate sentence was not a knowing, voluntary, and intelligent waiver of a right, as required under the Due Process Clause of the United States Constitution.  Petitioner argues that had counsel, whom he had just hired, made him aware of the fact that he could file a motion to mitigate

sentence, he would have done so, either through counsel or pro se.  Petitioner concedes that his counsel could not be deemed ineffective for failing to file the motion because a motion to mitigate under rule 3.800(c) is a collateral proceeding and thus Petitioner had no right to counsel.  However, Petitioner contends that the claim is predicated on the Petitioner's right to due process because he forfeited an avenue of relief that he was entitled to utilize and have the court consider.

The Government responds that motions to mitigate are discretionary, and that it is speculative at best that the court would have granted such a motion.  The Government further argues that the claims that Petitioner alleges he would have raised in such a motion are not valid claims to raise in a motion to mitigate.

Here, the undersigned finds Petitioner's claim to be without merit.  A motion to mitigate or reduce sentence under Florida Rule of Criminal Procedures 3.800(c) is a mechanism utilized to seek a reduction of a legal sentence imposed by the court.  Relying on *Lee v. United States*, 137 S. Ct. 1958 (2017), Petitioner argues that because he did not voluntarily waive his right to file the discretionary motion, he should now be entitled to file one.  Petitioner contends that the prejudice he has suffered is that he lost the opportunity to have a hearing to which he was entitled.

*Lee* does not support Petitioner's claim.  In *Lee*, the appellant argued that he had suffered prejudice because he entered into a plea agreement based on his counsel's deficient performance rather than proceeding to trial, that is, he was induced to give up a fundamental Constitutional right due to ineffective assistance of counsel.  137 S. Ct. at 1965.  This bears little resemblance to Petitioner's situation where he proceeded to trial, was convicted by a jury, and was sentenced.  He did not enter into a plea or sentencing

agreement, counseled or otherwise.  He did not unwittingly give up a fundamental right; he simply missed out on the opportunity to file a discretionary motion.  The undersigned is unaware of any court that has extended the holding in *Lee* as Petitioner requests. Further, the record demonstrates that prior to sentencing Petitioner's counsel moved for a downward departure from his sentencing guidelines, and the motion was denied.  On these facts, the undersigned finds that the rejection of Petitioner's claim in the state court was neither contrary to, nor an unreasonable application of, controlling federal constitutional principles.  Thus, the undersigned recommends that Petitioner's request for habeas corpus relief be denied as to ground four.

## **Evidentiary Hearing**

In this case, the state record provides all pertinent facts, demonstrating an evidentiary hearing in federal court is not needed. *See Schiro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *see also* 28 U.S.C. § 2254(e)(2) (stating federal courts "shall *not* hold an evidentiary hearing" "unless the application shows" circumstances that are inapplicable to the instant Petition) (emphasis added).

## **Certificate of Appealability**

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*   After careful consideration of the record, the undersigned recommends that this Court should not issue a certificate of appealability.

## **RECOMMENDATION**

Based upon the foregoing, the undersigned hereby RECOMMENDS that Movant's § 2254 Motion be DENIED.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 3rd day of May 2023.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable Aileen M. Cannon

All Counsel of Record